## D. W. RHYNE v. BLAS GUEVARA.

1. HOMESTEAD EXEMPTION. *Execution sale. Allotment. Code* 1880, § 1251.

   If a homestead in a town exceeds two thousand dollars in value, the sheriff, under execution, cannot select and sell part of it, but must summon freeholders to set apart the exemption as directed by the statute.

2. SAME. *Land not used as part of homestead.*

   A debtor residing in a town on a place exceeding in value two thousand dollars, who owns another lot just across a street upon which is situated his orchard, vineyard and servant's house, but which has been rented out for two years to a person not his servant, cannot claim such lot as part of his homestead, and the sheriff may levy upon and sell it under execution.

3. LANDLORD AND TENANT. *Title subsequently vested in another. Attornment.*

   A tenant cannot dispute that the landlord's title was good *when he entered;* yet he may show that it afterwards vested in another, and his attornment to such other is good.

FROM the circuit court of Holmes county.

HON. C. H. CAMPBELL, Judge.

Rhyne, the appellant, being a householder and having a family, was the owner of a tract of land situated partly in the town of Lexington, upon which was situated his residence, stables, a storehouse and other buildings, all within the corporate limits. This land, with the buildings thereon, was worth more than two thousand dollars. He also owned another lot containing about one acre, number 148, just across a road or street from the residence, upon which was situated his orchard, vineyard, and a house formerly occupied by his cook or servant. This lot had been used in connection with his residence. In 1887 it was rented to appellee Guevara, who was not a servant, at a monthly rental of five dollars. He occupied the house and cultivated the land, the orchard

and vineyard being neglected.   The renting was by the month, and the appellant testified that this was temporary, after his cook had left, and that he had previously used the lot as a part of his homestead; that his cook had always occupied the house, and that it was the only building that was suitable and convenient for this purpose, and that he only expected to rent until he could get a cook.

The appellee continued to occupy the premises under this arrangement until February, 1889, when lot 148 was levied upon and sold under execution against Rhyne, and E. F. Noel became the purchaser for $25, and the sheriff executed to him a deed. After this the appellee ceased to pay rent to Rhyne, who instituted proceedings as against a tenant holding over after non-payment of rent, and obtained judgment in the justice court.

An appeal was taken to the circuit court, where, by agreement, the cause was tried without a jury.   Guevara defended upon the ground that he was no longer tenant of Rhyne, having attorned to Noel when he became purchaser of the lot at sheriff's sale.   From a judgment in favor of the defendant, Rhyne appealed.

*Hooker & Wilson,* for appellant.

1. To constitute a homestead the land must be " owned and occupied as a residence."   It is the use that determines its character.   The land need not be in one or more lots, and if there are several lots, they need not be contiguous.   *Acker* v. *Trueland,* 56 Miss. 30; 36 Vt. 269; 27 Ill. 393; 33 Cal. 227.

The statute limits only the value and not the quantity of land exempt in a city or town.   The homestead includes ·residence, kitchen, stables, servants' houses, gardens, orchards, etc.   *Gregg* v. *Boswick,* 33 Cal. 227.

The evidence shows that this land was used as a necessary and convenient part of the homestead, and this gave it value.

The temporary renting of homestead lots is not an abandonment of the exemption.   19 Texas, 371; 37 Ark. 298; 4 S. W. Rep. 53, 645; 64 Miss. 374.

2. This lot being part of the homestead, although the remainder of the property was worth over two thousand dollars, manifestly

the sheriff had no authority to levy upon and sell it. His plain duty under the statute was to levy upon the whole property and summon freeholders to set apart the exemption. Code 1880, § 1251 *et seq.* He could not constitute himself judge and jury, and arbitrarily say, a part of this homestead is worth two thousand dollars, and I will sell the remainder. 64 Miss. 374. On a legal valuation by freeholders, the debtor had the right to pay the excess over two thousand dollars and keep all the property. The sheriff could not trim down the homestead to suit his own notions, and his action in attempting to sell this particular part of it was void.

3. Under the proceedings instituted in pursuance of § 1333 *et seq.* of the code, the question is purely one of the right of possession as between the landlord and his defaulting tenant. Here the defendant admits the truth of the allegations in plaintiff's affidavit, but justifies his holding by claiming under another party. He assumes to be the judge as to the validity of the execution sale and proceedings, and in a merely possessory action attempts to place on the plaintiff the burden of showing that the sale was illegal.

This case is clearly distinguishable from *Wolf* v. *Johnson,* 30 Miss. 513.

While a tenant may acquire an adverse title, law and honesty require that he should first restore possession to his landlord. 64 Miss. 807 ; 57 Ib. 596.

*Noel & Tackett,* for appellee.

1. It is true a tenant cannot dispute the title of his landlord, but this only applies to the title the landlord had at the time of the lease. The tenant may show that the landlord's title has since become vested in another. *Wolf* v. *Johnson,* 30 Miss. 515. See also code 1880, § 1192, which authorizes an attornment to a stranger, when there has been a change of title to such stranger in consequence of a judgment of a court of law.

2. We submit that lot 148 did not constitute a part of the debtor's homestead and residence. He occupied other property far exceeding in value two thousand dollars, and this lot was disconnected

from his residence, was rented out and was not used as a part of the homestead. The fact that this lot was once used in connection with the residence does not change this. We do not question the proposition that a homestead may embrace several distinct lots, provided they do not exceed two thousand dollars in value and are necessary and convenient to the use of the property as a residence. A lot separate and apart from the homestead, when rented to a person other than an employé of the debtor, cannot be exempt. We think this is clear from the words of the statute, that the land and buildings must be occupied as a residence, and also by reason and authority. On this point, see 70 Am. Dec., 348–352 note.

As to the correct meaning of the word "residence" we refer to the opinion of the supreme court of Kansas in the case of *Ashton* v. *Ingle*, 27 Am. R. 203.

In *Litchford* v. *Cary*, 52 Miss. 791, it was held that where the homestead and an excess were sold, the purchaser acquired title to such excess.

In this case, even if the property in controversy was appurtenant to the homestead, it was separate from it, was beyond the value fixed for a homestead, and was therefore subject to sale. See *Bunn* v. *Lindsay*, 6 Am. St. Rep. 48, and note p. 54.

CAMPBELL, J., delivered the opinion of the court.

It is true that the sheriff may not lawfully seize and sell part of a homestead, and must proceed as directed by the statute in such case, but lot 148 had been so treated and dealt with by the owner as to justify the conclusion that it was not part of his homestead, but distinct from it.

While Guevara could not dispute that Rhyne's title, under which he entered as lessee was good, *when he entered*, he was entitled to show that this title had by operation of law been vested in Noel, and as Noel might have ejected him, he was justified in attorning to him.

*Affirmed.*